**Wilner VINCENT, Plaintiff,**

v.

**WELLS FARGO GUARD SERVICES, INC., of Florida et al., Defendants.**

**No. 95–1998–CIV.**

United States District Court, S.D. Florida, Miami Division.

March 24, 1999.

William G. Bell, Miami, FL, for plaintiff.

Thomas L. Henderson, Lewis, Fisher, Henderson & Claxton, Memphis, TN, for defendants.

### ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment on Plaintiff's Failure To Provide COBRA Notice Claim ("Motion") (DE # 261).

UPON CONSIDERATION of the Motion, Plaintiff's Memorandum on Defendant's Failure To Give Plaintiff a COBRA Notice ("Plaintiff's Memorandum") (DE # 265), and the pertinent portions of the record, and being otherwise fully advised

in the premises, the Court enters the following Order.

## STATEMENT OF FACTS

Wilner Vincent ("Vincent") was a Wells Fargo Guard Services, Inc. of Florida ("Wells Fargo") employee from May 8, 1992 until his termination on February 3, 1995. Exhibits A & I to Defendants' Motion. Vincent's Wells Fargo health benefits plans are governed by ERISA. Exhibit A to Plaintiff's Memorandum. The plans' "Continuation of Health Coverage" section provides that, pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), an employer must offer to continue group health benefits to certain employees and dependents. Id. Under Vincent's plans, the " 'ERISA' Plan Administrator or Employer must, within 14 days of notification of a qualifying event, advise the employee or eligible dependent of the right to continue medical coverage." Id.[1] The plans' Schedule of Benefits lists the "employee benefits manager" as the plan administrator. Id.

Wells Fargo contracted with Strategic Resource Company ("SRC") for administration of the health benefits plans. Deposition of Loretta Steelman ("Steelman Deposition") at 6. SRC was responsible for accepting premiums and determining entitlement to and the amount of benefits once a claim was submitted. Id. Upon receiving notification from Wells Fargo that an employee had been terminated, SRC was responsible for issuing a COBRA notice to the terminated employee. Deposition of Edward Scott Ray ("Ray Deposition") at 35–36.

Vincent did not receive a COBRA notice when he was terminated by Wells Fargo in February 1995. Ray Deposition at 36–37. In their Counter–Motion for Summary Judgment (DE # 80); Defendants conceded that Vincent was entitled to a COBRA notice. Counter–Motion for Summary Judgment at 25. Although Vincent's counsel notified Wells Fargo on July 20, 1995 that Vincent had not received a COBRA notice, Vincent did not receive a COBRA notice until shortly after April 3, 1996. Exhibit B to Plaintiff's Memorandum; Exhibit J to Defendant's Motion. The notice instructed Vincent to address all questions about COBRA to SRC. Exhibit J to Defendants' Motion. The COBRA notice provided that forms for continuation of medical coverage should be sent to the COBRA Department at SRC. Id.

Edward Scott Ray, Manager of Group Benefits for Defendant Borg Warner, testified that the responsibility for issuing a COBRA notice is placed both on the employer and on SRC. Ray Deposition at 35. According to Ray, the employer, via a computer tape, notifies SRC that a person has been terminated, and SRC subsequently generates the COBRA notification. Id. at 36. In Vincent's case, Wells Fargo failed to notify SRC of Vincent's termination. Ray testified: "It's not a foolproof system and there can be people that are eligible for COBRA that we don't identify through that vehicle for whatever reasons. I have seen periodically, though, some individuals fall between the cracks and not be included on that computer file." Id. Upon investigation, Ray learned that Vincent "just fell between the cracks" and that "[t]here was a problem in getting his name included on the computer tape that went to SRC." Id. at 36–37.[2]

---

1. The parties do not dispute that Vincent's termination was a "qualifying event" under 29 U.S.C. § 1163.

2. Defendants point to SRC's decision to decline payment for Vincent's January 1995 hospitalization as evidence that Wells Fargo notified SRC of Vincent's termination. This assertion is contradicted by Ray's testimony. At deposition, Ray divided employees into the

following three categories: (1) employees who have premiums deducted from their paychecks, (2) terminated employees, and (3) employees who are not active on the payroll and do not have money deducted from their paychecks because, for example, they are on a leave of absence, are out on disability or are between assignments. Ray Deposition at 37. Ray testified that Vincent may have fallen into

Neither Vincent nor his family members were treated by physicians or hospitalized between the time Vincent was terminated by Wells Fargo and the time he came under his subsequent employer's insurance coverage in September 1995. Deposition of Wilner Vincent at 104–105, 182, a portion of which is attached as Exhibit G to Defendants' Motion and the remainder of which was filed with the Court in support of Defendant's Counter–Motion (DE # 80).

## DISCUSSION

■■■ In Count V of his Third Amended Complaint, Vincent seeks damages under 29 U.S.C. § 1132(c) for Defendants' alleged failure to comply with the COBRA notice requirement of 29 U.S.C. § 1166(a)(4). Under ERISA's civil enforcement provision, an administrator who fails to provide a COBRA notice to a plan participant or beneficiary under 29 U.S.C. § 1166(a)(4) may, in the court's discretion, be personally liable to the participant or beneficiary in the amount of up to $100 a day from the date of such failure. 29 U.S.C. § 1132(c). Even though the ERISA plans in question identify the "employee benefits manager" as the plan administrator, the Court concludes that SRC was the de facto administrator of the health benefits plans. As noted above, SRC was responsible for collecting premiums, determining entitlement and benefits, issuing COBRA notices and dealing with inquiries about COBRA benefits. In addition, forms to continue medical coverage

under COBRA were sent to the COBRA Department at SRC. Since SRC is the administrator for the plans at issue, the Court concludes that Defendants cannot be held liable under 29 U.S.C. § 1132(c) for failure to provide a COBRA notice.

Assuming for purposes of this Order that Vincent had named SRC as a defendant in this case, Vincent could not recover from SRC under § 1132(c). As noted above and conceded by Edward Scott Ray, Defendant Borg Warner's Manager of Group Insurance Benefits, Vincent "just fell between the cracks" and his name was not included on the computer tape sent to SRC with the names of terminated employees. In other words, Wells Fargo did not notify SRC of Vincent's termination within 30 days, as it was required to do under 29 U.S.C. § 1166(a)(2).[3] Since SRC did not receive notice of Vincent's termination, the qualifying event in this case, its COBRA notice obligation under 29 U.S.C. § 1166(a)(4) was not triggered. See Kidder v. H & B Marine, Inc., 932 F.2d 347, 357 (5th Cir.1991); Ward v. Bethenergy Mines, Inc., 851 F.Supp. 235, 237 (S.D.W.Va.1994).[4]

The issue thus becomes whether Wells Fargo is liable to Vincent for failing to comply with its § 1166(a)(2) obligation to notify the plan administrator of Vincent's termination. The Court's independent research reveals that the Fifth Circuit and at least two district courts have addressed this issue. In Kidder v. H & B Marine,

the third category. Id. at 37, 51. While Vincent's inclusion in the group of employees not actively on the payroll may explain SRC's decision to decline payment for January 1995 hospital expenses, it does not constitute active notice to SRC that Vincent was terminated.

3. Pursuant to 29 U.S.C. § 1166(a)(2), "the employer of an employee under a plan must notify the administrator of a qualifying event described in paragraph (1), (2), (4), or (6) of section 1163 of this title within 30 days ... of the date of the qualifying event." Termination of employment is a qualifying event under 29 U.S.C. § 1163(2).

4. Wells Fargo ultimately notified SRC of Vincent's termination. Although the materials submitted to the Court do not provide the specific date on which Wells Fargo gave notice, Ray's deposition testimony indicates that it was not until after this action was initiated in September 1995. Ray Deposition at 51 ("[H]is termination of coverage was incorrect on the SRC system, and that information was corrected, I thought, at a relatively early stage of this investigatory process after the litigation was initiated."). There is no indication in the materials submitted, and Vincent does not argue, that SRC failed to issue a COBRA notice within 14 days after it was belatedly notified of Vincent's termination.

*Inc.*, the Fifth Circuit held an employer liable for the difference between the benefits its former employee would have received under continued group coverage and the benefits its former employee received under a conversion policy when the employer failed to notify the ERISA plan administrator of the employee's termination and his eligibility for continued coverage under COBRA. *Kidder*, 932 F.2d 347, 350, 357 (5th Cir.1991). In *Ward v. Bethenergy Mines, Inc.*, 851 F.Supp. 235, 240 (S.D.W.Va.1994), and *Van Hoove v. Mid–America Building Maintenance, Inc.*, 841 F.Supp. 1523, 1536–37 (D.Kan. 1993), district courts found employers liable for medical expenses incurred by a plan participant and a plan beneficiary, respectively, as a result of the employers' failure to notify plan administrators of qualifying events under 29 U.S.C. § 1163.

Vincent, unlike the plaintiffs in *Kidder*, *Ward* and *Van Hoove*, neither incurred medical expenses during what would have been the period of continued coverage under COBRA nor sustained other related losses for which the Court could now make him whole. Moreover, the Court cannot penalize Wells Fargo under 29 U.S.C. § 1132(c) for its failure to notify the plan administrator of Vincent's termination. The civil penalty provision of § 1132(c) is reserved for plan administrators, and the Court, unfortunately, cannot alter or expand the remedy created by Congress. *Id.* at 1537.

The Eleventh Circuit, in holding that neither prejudice to a plaintiff nor bad faith are prerequisites to the imposition of a civil penalty under § 1132(c), noted that the civil penalty provision is intended to punish noncompliance with disclosure obligations. *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494–95 (11th Cir.1993) (finding that a district court's refusal to impose a civil penalty on remand would be an abuse of discretion where there was an unexplained delay of twelve months in providing a benefits statement). Had Congress permitted civil penalties against employers

for failure to comply with 29 U.S.C. § 1166(a)(2), imposition of a penalty would be particularly appropriate in this case where there was approximately a one-year delay in notifying the plan administrator of a qualifying event.

## CONCLUSION

The Court concludes that Wells Fargo violated 29 U.S.C. § 1166(a)(2) by failing to notify the ERISA administrator of Vincent's termination within the 30–day period prescribed by the statute. The Court, nonetheless, grants Defendants' Motion for Summary Judgment because Defendants, who are not the plan administrators, cannot be liable under 29 U.S.C. § 1132(c).

## *PARTIAL FINAL JUDGMENT*

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment on Plaintiff's Failure To Provide COBRA Notice Claim ("Defendants' Motion") (DE # 261) and Plaintiff's Motion That Court Enter Judgment on Plaintiff's Claim That Plaintiff's ERISA Rights Were Violated, etc. ("Plaintiff's Motion for Judgment") (DE # 263).

On March 22, 1999, the Court entered an Order granting Defendants' Motion. Accordingly, it is ORDERED AND ADJUDGED that Partial Final Judgment is entered in favor of Defendants and against Plaintiff as to the COBRA claim contained in Count V of Plaintiff's Third Amended Complaint. Plaintiff shall take nothing as to the COBRA claim contained in Count V of Plaintiff's Third Amended Complaint.

It is further ORDERED AND ADJUDGED that Plaintiff's Motion for Judgment is GRANTED. Partial Final Judgment is entered in favor of Plaintiff and against Defendants as to the ERISA medical benefits claim contained in Count V of Plaintiff's Third Amended Complaint.

LET EXECUTION ISSUE.